523 A.2d 794

**David BOOKS and Carolyn Books, his wife**

v.

**PENNSYLVANIA POWER & LIGHT COMPANY and Agway, Inc.**

v.

**MACK TRUCKS, INC., Trailer Company of Lancaster and Hill Manufacturing Company.**

**Appeal of PENNSYLVANIA POWER & LIGHT COMPANY.**

Superior Court of Pennsylvania.

Submitted Nov. 10, 1986.

Filed March 31, 1987.

---

Charles E. Wasilefski, Harrisburg, for appellant.

Leslie M. Fields, York, for Books, appellees.

William F. Martson, Carlisle, for Agway, appellee.

William A. Addams, Carlisle, for Mack Truck Inc., appellee.

Susan E. Grosh, Lancaster, for Trailer Co., appellee.

Robert J. Brown, York, for Hill Mfg., appellee.

Before ROWLEY, WATKINS and ROBERTS, JJ.

## OPINION OF THE COURT

ROWLEY, Judge:

In this appeal from the entry of a summary judgment in favor of Mack Trucks, Inc. and Hill Manufacturing Company, appellees, Pennsylvania Power & Light Company (PPL), the appellant, presents a single issue for review: whether adequate warnings on a Mack tractor and a Hill dump trailer might have caused plaintiff to act differently at the time of his injury. In order to resolve that issue it is necessary to ascertain whether the record shows that plaintiff fully appreciated the risk of operating the tractor and dump trailer in the vicinity of overhead power lines without coming into actual contact with the lines. After having carefully considered the parties' arguments,[1] we find merit in PPL's contention and vacate the summary judgment.

David Books (plaintiff) and his wife filed a complaint in trespass against PPL and Agway alleging that plaintiff was electrocuted when the dump trailer he was unloading at Agway "came into contact or was caused to be electrified by the overhanging power lines owned, operated and controlled by [PPL]." R.R. 4a. No one saw the trailer hit the power lines and the record is not clear whether the accident resulted from the equipment coming in contact with the lines or whether the electrical current arced across a space between the lines and the nearby trailer. Plaintiff maintains that PPL negligently placed its power lines near a dumping site and that Agway was negligent in directing that materials be dumped near the lines.

PPL joined Mack and Hill[2] as additional defendants and filed a complaint against them on grounds of negligence, strict liability under the Restatement (Second) of Torts § 402A, and the breach of express and/or implied warranties. The dump trailer that plaintiff was operating was manufactured by Hill and was pulled by a tractor manufac-

1. Plaintiffs have not participated in the appeal.
2. PPL also joined Trailer Company of Lancaster. The trial court granted the Trailer Company's motion for summary judgment which is not contested in the present appeal.

tured by Mack. In its complaint, PPL alleged that Mack and Hill failed to affix a warning on their products of the danger of raising the dump trailer "in the vicinity of overhead electrical transmission lines." R.R. 20a.

After the pleadings were closed, PPL, Mack and Hill filed motions for summary judgment. They relied on the deposition testimony of plaintiff and a co-worker. Neither Mack nor Hill were represented at the deposition, presumably because it was taken prior to the filing of the complaint joining them in the action. In order to fully understand the bases of the motions, it is necessary to first set forth the facts, as viewed under the appropriate standard. The record must be examined in a light most favorable to the nonmoving party and all doubts must be resolved against the moving party. See *Washington Federal Savings and Loan Association v. Stein*, 357 Pa.Super. 286, 515 A.2d 980 (1986). Plaintiff was directed by his employer to take a load of lime to Agway and dump it there. A second truck, also bearing lime for Agway, followed plaintiff. That truck was driven by plaintiff's co-worker, Wayne Espenshade, Jr. When they arrived at Agway, they were told to dump the lime in an area where overhead power lines were located. Plaintiff stated that he was aware of the power lines. When asked if there was any discussion about the lines, he responded, "I said, we would watch the lines, we didn't want to hit the lines." R.R. 90a. The decision was made to dump Espenshade's load first. Plaintiff testified as follows:

Q When you got out of your trucks, then, you saw that the lime was at the end of the building?

A Yes, sir.

Q At that point, did you look at the wires overhead?

A Not particularly.

Q Did you have any discussion about the wires?

A Other than we knew they were there and we didn't want to hit them.

\*       \*       \*       \*       \*       \*

Q Did you look overhead while you were in that open spot?

A  Yes, I did, and I seen that there was enough room to dump if we watched the lines, where we stayed behind them.

\*　　\*　　\*　　\*　　\*　　\*

Q  When you judged that you had room to dump, you took into consideration the location of those power lines, did you not?

A  Yes, sir.

Q  It was based upon what you observed, it was your decision to go ahead and make that dump, despite the fact that it may be a little bit difficult because of the power lines overhead, isn't that true?

A  I wouldn't really say difficult.  If you watch what you are doing and use common sense, there's not a whole lot of things that are really difficult.

R.R. 94a–95a, 105a–106a.

To raise the dump trailer, the driver had to operate the clutch inside the cab and two levers located on the outside of the cab on the driver's side.  R.R. 146a, 151a & 155a. While Espenshade remained in the cab and operated the clutch and the levers to raise the trailer, plaintiff stood near the truck and watched the lime pouring out of the rear of the trailer.  R.R. 144a.  After a portion of the load was dumped, Espenshade lowered the trailer and pulled the truck forward, closer to the power lines, in order to dump more lime.  R.R. 107a–108a & 145a.  This placed the cab of the tractor under the lines and the trailer behind them.  *Id.* at 109a.  Plaintiff watched so that the trailer remained behind the lines as Espenshade pulled forward.  For the second dump, plaintiff operated the levers while Espenshade remained in the cab and operated the clutch.  Plaintiff also watched the "bed going up, so we wouldn't tip it over, and the lines, and stuff."  *Id.* at 92a.

Q  Do you remember at that point when you had your hands on the levers, whether or not you saw the power lines overhead?

A  We were behind the power lines.

Q  How had you determined that?

A    I could see between the trailer and the power lines.

\*    \*    \*    \*    \*    \*

Q    At some point you took your eyes off the lines and observed to see if the limestone was coming out the back, is that true?

A    Yes, sir, when I knew we were clear of them.

Q    When you say clear of them, what does that mean to you?

A    Behind them, we weren't going to touch them.

Q    Was the trailer or part of the bed above the lines when you made that determination?

A    I couldn't really say whether it was above the lines or what, but you could see we were behind them—you could see the lines and the trailer, and there was a space between them.

Q    You made a determination that you were not going to contact the line, is that correct?

A    Yes, sir.

\*    \*    \*    \*    \*    \*

Q    When this accident occurred and the wires struck the bed, you do not know if that bed was still raising, do you?

A    I don't know, no.  The only thing I do know is that we were behind it.

Q    When you say behind it, it was your estimation that you would clear the wires as it raised up, is that correct?

A    Yes, sir.

R.R. 93a, 113a–114a & 117a.  Plaintiff was electrocuted as the dump trailer was being raised and while he had his hands on the levers which raised the trailer.

In its motion for summary judgment, Mack alleged that plaintiff's theory of how the accident occurred was that he raised the dump trailer which came in *contact* with the power lines.  Mack contended that plaintiff's deposition testimony revealed that he was aware of the danger in operating the equipment near the power lines and thought he could avoid contact between the lines and the dump

trailer. Mack's argument is that because the danger involved in the trailer coming into contact with the power lines was obvious to plaintiff, no warning was required; therefore, Mack submits that the failure to warn was not a substantial factor in causing plaintiff's injuries.

In its motion for summary judgment, Hill also limited plaintiff's theory to *contact* between the lines and the trailer. Hill, however, argued not only that the failure to warn was not a substantial factor in causing plaintiff's injuries, but that plaintiff assumed the risk of injury by operating the dump trailer despite his knowledge of the danger associated with contact between the equipment and the power lines.

Contrary to the position taken by appellees in their motions for summary judgment, PPL (appellant) claimed that plaintiff assumed the risk of injury by operating the dump trailer *in the vicinity of* the power lines. The trial court denied PPL's motion, but granted the motions of Mack and Hill. Although PPL could not and did not appeal from the order denying its motion, we find it helpful to set forth the trial court's reasons for denying PPL's motion since they shed light on the court's reasons for granting Mack and Hill's motions for summary judgment, which are the subject of the present appeal by PPL.

After reviewing plaintiff's deposition testimony, the trial court concluded that plaintiff was aware of the power lines and that he had made an effort to avoid contact between the dump trailer and the power lines. The court refused to enter summary judgment in favor of PPL, however, because the court found that issues of material fact remained as to whether plaintiff assumed the risk that electrocution could have occurred from the wind blowing the power lines into contact with the dump trailer or the risk that electric current might jump or arc from the power lines to the nearby dump trailer as it approached the lines. Thus, the court concluded that although plaintiff assumed the risk of danger associated with the dump trailer coming in *contact* with the power lines, the court refused to find that plaintiff

assumed the risk of operating the dump trailer *near* the power lines.

The trial court granted Mack and Hill's motions for summary judgment, however, finding that a warning on the truck and dump trailer would not have caused plaintiff to act differently. The trial court emphasized that Mack and Hill's motions for summary judgment were based on an assumption of risk defense with regard to a failure to warn. The court noted that a warning "could have stated no more than [plaintiff] already knew: don't raise the trailer where it might touch electrical wires." Trial court's op. at 6. The trial court distinguished the assumption of the risk defense asserted by Mack and Hill from that advanced by PPL by noting that Mack and Hill's defense was limited to danger resulting from the failure to warn only, whereas PPL's defense required the court to find that plaintiff generally accepted all danger associated in working near the power lines which was not clear from the record.

On appeal, PPL argues that two issues of material fact bar the entry of summary judgment: 1) whether a warning would have caused plaintiff to act differently, and 2) whether plaintiff fully appreciated the risk of electrocution from operating the vehicle *near* the power lines. We agree.

Summary judgment may be entered only if there is no issue of material fact to be tried. *Washington Federal Savings and Loan Association v. Stein, supra.* "A summary judgment should only be entered in those cases which are clear and free from doubt." *Roland v. Kravco, Inc.,* 355 Pa.Super. 493, 499, 513 A.2d 1029, 1033 (1986) (citation omitted).

A review of Mack and Hill's motions for summary judgment reveals that the trial court incorrectly characterized the motions as limited to the defense that plaintiff assumed the risk of injury. In its motion, Mack alleged only that its failure to warn was not a legal cause of plaintiff's injury; it did not raise assumption of the risk. Hill similarly challenged the causation element, although Hill also raised an assumption of the risk defense. Under either theory, we

conclude, based on the record before us, that Mack and Hill failed to establish that their right to summary judgment was clear and free from doubt.

In Pennsylvania, a properly designed
product may be in an unreasonably dangerous defective condition if its manufacturer fails to warn the user or consumer of latent dangers in the use or operation of the product. *See, e.g., Sherk v. Daisy-Heddon, A Division of Victor Comptometer Corporation,* 498 Pa. 594, 450 A.2d 615 (1982). Before strict liability will be imposed on a manufacturer for failure to warn adequately of latent dangers in the use of a product, however, the plaintiff must establish that the failure to warn adequately of such dangers was the cause-in-fact and proximate cause of his or her injuries.... Where the theory of liability is failure to warn adequately, the evidence must be such as to support a reasonable inference, rather than a guess, that the existence of an adequate warning may have prevented the accident before the issue of causation may be submitted to the jury.

*Conti v. Ford Motor Co.,* 743 F.2d 195, 197–198 (3rd Cir. 1984) (citation omitted).

From the inception of the case, plaintiff advanced alternate theories of how the accident occurred: either the equipment came into contact with the power lines, *or* the equipment was somehow electrified by the lines. PPL advanced the same alternate theories when, in its complaint joining Mack and Hill to the action, it alleged the Mack and Hill should have placed warnings on their products of the danger of operating the equipment in the vicinity of power lines. The trial court recognized the importance of the alternate theories when it agreed that plaintiff assumed the risk of contact, but denied PPL's motion for summary judgment because the accident could have occurred when electrical current arced from the power lines to the equipment. This theory would not require the equipment to come in contact with the power lines. However, the trial court disregarded this possibility when it found that a

warning would have been limited to the danger of *contact* with the power lines.[3] The trial court was unduly restrictive when it created such a warning since PPL alleged that the warning should have been broader and included the danger of working near the power lines.

There is evidence in the record before us from which a jury could find that plaintiff raised the dump trailer near power lines. Whether the electrical charge that injured plaintiff was the result of the trailer coming into contact with the power lines or was the result of the phenomenon known as arcing is a material fact that is yet to be determined.[4] The trial court recognized this when in its opinion, it noted that, "electricity may have somehow 'arced' from the power lines to the truck bed as the dumping trailer approached the lines." Trial court's op. at 4. Although plaintiff testified that he was aware of the danger from *contact* between the trailer and the power lines, there is no evidence in the record to suggest that he was aware of the danger in allowing the trailer to be operated *near* the power lines. Because there is no evidence to suggest that plaintiff was aware of the danger of operating the dump trailer *near* the power lines, a genuine issue of material fact exists as to whether the type of warning suggested by PPL would have caused plaintiff to act differently. Since all doubts must be resolved against Mack and Hill, their right to summary judgment is not clear and free from doubt. Accordingly, the trial court erred in entering summary judgment in favor of Mack and Hill.

3.  By finding that a warning would merely have informed plaintiff of a danger he was already aware of, the trial court determined that the warning would not have caused plaintiff to act differently and, accordingly, the failure to warn was not the legal cause of plaintiff's injuries. See *Conti v. Ford Motor Co., supra.* Since we have concluded that there is no record evidence that plaintiff was aware of the danger of raising the dump trailer *near* the power lines, such a finding would be erroneous at this juncture.

4.  The electrical phenomenon known as arcing is dependent on a number of variables including relative humidity, atmospheric pressure, insulation of the wires, and the shape of the portion of the trailer closest to the power lines, all of which are subject to proof at trial.

Summary judgment entered in favor of Mack Trucks, Inc. and Hill Manufacturing Company is vacated. The case is remanded to the trial court for further proceedings. Jurisdiction is relinquished.