545 A.2d 906

**Loretta ELLIS, Administratrix of the Estate of McHendly Ellis, Deceased**

v.

**CHICAGO BRIDGE & IRON CO., Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 11, 1987.

Filed July 1, 1988.

Reargument Denied Aug. 23, 1988.

Raymond T. Cullen, Philadelphia, for appellant.

Stanley B. Gruber, Philadelphia, for appellee.

Before MONTEMURO, POPOVICH and CERCONE, JJ.

CERCONE, Judge:

This appeal is from an order of the trial court denying appellant Chicago Bridge and Iron Company's (hereinafter "CBI") post-trial motion for judgment notwithstanding the verdict and for a new trial.

The relevant facts of the case are as follows: In December, 1979, CBI arranged for the shipment of steel plates, fabricated at its plant in Greenville, Pennsylvania, to the United Arab Emirates by barge via the Port of Philadelphia. The shipment included seventy-two (72) trapezoidal or pie-shaped plates.

CBI packaged the 72 plates of steel in bundles (or drafts) of twelve sheets each. Each draft was approximately three inches thick, weighed over 7000 pounds, and was clipped together by several C-shaped steel clips. CBI packaged the steel this way in an effort to maintain its rigidity for safe shipment and to insure the safety of individuals who would be handling the steel. CBI provided no lifting or shipping instructions with the drafts, nor did CBI mark the center of gravity of each draft.

The decedent, McHendly Ellis, was a longshoreman employed by the Delaware Operating Company, a stevedoring company. Mr. Ellis normally worked as a docksman on the pier but was assigned to work aboard the barge on Decem-

ber 11, 1979. The workers used two loops of chain to lift the trapezoid-shaped drafts. At the time of the fateful incident, the workers attempted to move two bundles at one time. The workers lifted the combined weight of 14,708 pounds onto the barge. The steel did not fit into the intended space. Therefore, the crane operator lifted the drafts while the workers attempted to reposition the steel by turning it around manually. While being manipulated, the steel bumped the mast of a forklift truck located on the barge. The drafts slid out of the chains and fell onto the deck, crushing McHendly Ellis who had fallen under the steel and causing his death.

Appellee Loretta Ellis, the decedent's wife, brought actions under the wrongful death and survival acts against CBI and Atlantis Contractors, Inc. (hereinafter "Atlantis"), the shipper and exporter of the steel plates. The complaint included theories of negligence and strict liability. The negligence theory was abandoned at trial, as was the suit against Atlantis and the case proceeded solely on the theory of strict liability against CBI. The jury returned a verdict in favor of appellee in the amount of $750,000.00. Appellee moved for delay damages under Pennsylvania Rule of Civil Procedure 238, 42 Pa.C.S.A. Despite appellant's timely objection, the court awarded delay damages in the amount of $312,500.00. Judgment was entered for Loretta Ellis in the amount of $1,062,500.00. CBI moved for judgment notwithstanding the verdict and for a new trial, which motions were denied on May 20, 1987.[1]

Appellant has raised several claims of error for our review. However, because we have determined that as a matter of law the case was improperly tried under the theory of strict liability, we need not address each claim raised.

We begin by setting forth the language in section 402A of the Restatement (Second) of Torts which was adopted by our Supreme Court in *Webb v. Zern,* 422 Pa. 424, 220 A.2d 853 (1966):

**1.** *Ellis v. Atlantis Contractors, Inc.,* 15 Phila.Rptr. 219 (1987).

§ 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it was sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

*Id.*, 422 Pa. at 427, 220 A.2d at 854.

The crux of appellee's count in strict liability was that appellant failed to secure "lifting eyes" or other appropriate lifting devices to the drafts, it failed to mark the center of gravity of the drafts, and that it failed to provide appropriate lifting instructions and warnings, all of which rendered the drafts of steel "defective" or "unreasonably dangerous" within the meaning of section 402A. Appellant admits that it did not attach lifting devices, mark the center of gravity, or provide lifting instructions or warnings.

The fundamental issue to be determined by this court is whether, under the undisputed facts as given, the trial court erred in allowing this case to go to the jury on the theory of strict liability. The determinative question is whether a product, not alleged to be defective for use in its intended purpose, can become defective as to intermediate shippers by the manufacturer's failure to provide lifting devices, instructions, or warnings.

Product liability law is a branch of the law of torts. The function of tort law is to shift the cost of an accident from a

claimant to a defendant when the defendant is deemed "responsible" for the claimant's injuries. However, before a defendant may be deemed blameworthy, the court must identify a duty owed by that defendant which has been breached. A product seller or manufacturer should not, through the medium of tort law, be asked to pay damages merely because its product caused an injury. In failure to warn or instruct cases, recovery is sought on the theory that the product is "unreasonably dangerous" when unaccompanied by a warning with respect to nonobvious dangers inherent in the use of the product. The case at hand is not one of the use but merely one of the delivery of a product. It would have been more properly based in negligence and not strict liability.

While the manufacturer's responsibility for injuries resulting from the lack of warning as a defect in the product is an expansion of the supplier's role as a guarantor of a product's safety, it was not intended to make the manufacturer an insurer of all injuries caused by the product.[2] *See Azzarello v. Black Bros. Co., Inc.*, 480 Pa. 547, 391 A.2d 1020 (1978). Since almost every industrial product would appear to have some potential for inflicting harm, and since instructions and warnings can not reasonably be required in the marketing of every product, a rule as to standards of conduct must be applied in determining the circumstances under which a warning or instruction is required so as to keep every product from being considered "defective" with-

**2.** The distinction between holding the manufacturer as an insurer versus a guarantor of a product was explained by Dean Wade as follows:

What do we mean when we speak of strict liability of a manufacturer for harm caused by his product? It is sufficient for a plaintiff to show that he used the defendant's product and that he was injured? the answer to this is no. If the plaintiff's theory is breach of warranty, he must prove the breach—i.e., that the article was not merchantable or was not fit for the purpose sold. If the theory is strict liability in tort, the plaintiff must still prove that the article was unsafe in some way. Thus, the liability is not that of an insurer; it is not absolute in the literal sense of that word. Wade, *Strict Tort Liability of Manufacturers*, 19 S.W.L.T.J. 13 (1965).

out the warning and to keep the manufacturer from assuming the role of insurer rather than guarantor of its product.[3]

In order to prevail under strict liability a plaintiff must prove (1) that the product was defective, (2) that the defect existed when it left the hands of defendant, and (3) that the defect caused the harm. *See Berkebile v. Brantly Helicopter Corporation*, 462 Pa. 83, 98, 337 A.2d 893, 898 (1975).

The pivotal question in most product liability cases involves a determination of what is a defective product. The focus of this determination is in the product and not on the conduct of the manufacturer. *Accord Staymates v. ITT Holub Industries*, 364 Pa.Super. 37, 527 A.2d 140 (1987); *Lewis v. Coffing Hoist Division, Duff–Norton Co., Inc.*, 515 Pa. 334, 528 A.2d 590 (1987). The majority of product liability cases fit in two categories: manufacture defect or design defect. A subcategory of design defect includes inadequate warning [4], to the user or consumer, of the defect or dangerous propensity of the product. *See Berkebile v. Brantly Helicopter Corporation, supra;* Annotation, *Failure to Warn as Basis of Liability Under Doctrine of*

---

**3.** As was pointed out by one commentator, Birnbaum, *Unmasking the Test for Design Defect: From Negligence [to Warranty] to Strict Liability to Negligence:*

> On the one hand, courts have accepted the social policy rationale that those injured by defective products should be compensated for their injuries without being subject to the contractual intricacies of the law of sales and without having to face the onerous evidentiary burdens inherent in negligence cases. On the other hand, even though courts agree that manufacturers can most effectively distribute the cost of injuries, they recoil at the prospect of making sellers insurers of their products and thus absolutely liable for any and all injuries sustained from the use of those products.
>
> Underlying the whole body of tort law is an awareness that the need for compensation, alone, is not a sufficient basis for an award ... An award is not to be made unless there exists some reason other than the mere need of the victim for compensation. Otherwise, the award will be an arbitrary shifting of loss from one person to another at a net loss to society due to the economic and sociological costs of adjudication.

33 Vand.L.Rev. 593, 600–601 (1980) (footnotes deleted).

**4.** As stated in *Carrecter v. Colson Equipment Co.*, 346 Pa.Super. 95, 102 n. 8, 499 A.2d 326 (1985): "We perfer the terminology 'inadequate warnings' to 'failure to warn' because the latter language suggests a breach of a duty in a way which tends to connote negligence."

227

*Strict Liability in Tort,* 53 A.L.R.3d 239 (1973); Wade, *On Product "Design Defects" and Their Actionability,* 33 Vand.L.Rev. 551 (1980) (hereinafter "Wade"); and Twerski, Weinstein, Donaher and Piehler, *The Use and Abuse of Warnings in Products Liability—Design Defect Litigation Comes of Age,* 61 Cornell L.Rev. 495 (1976) (hereinafter "Twerski"). Appellee frames her argument in this subcategory.

Appellee's theory at trial relied heavily on language found in *Berkebile v. Brantly Helicopter Corporation, supra.* In *Berkebile,* the plaintiff's decedent was killed in a helicopter crash. Plaintiff brought wrongful death and survival actions, including a claim in strict liability, against the manufacturer of the helicopter. In an opinion announcing the decision of the court, then Chief Justice Jones, with one Justice joining and one Justice concurring in the rationale regarding inadequate warning, used the following language:

> A "defective condition" is not limited to defects in design or manufacture. The seller must provide with the product every element necessary to make it safe for use. *One such element may be warnings and/or instructions concerning use of the product.* A seller must give such warning and instructions as are required to inform the user or consumer of the possible risks and inherent limitations of his product. Restatement (Second) of Torts § 402A, comment h. *If the product is defective absent such warnings, and the defect is a proximate cause of the plaintiff's injury, the seller is strictly liable without proof of negligence.*
>
> "Comment h to the section [402–A] makes it clear that a product, as to which adequate warning of danger involved in its use is required, sold without such warning is in a 'defective condition.'" *Incollingo v. Ewing, et al.,* 444 Pa. 263, 287 [444 Pa. 299], 282 A.2d 206, 219 (1971).

*Id.,* 462 Pa. at 100, 337 A.2d at 902 (emphasis added). It is based on this expansive language that appellee rests her claim in strict liability. She argues that, in *Berkebile,* the

Supreme Court of Pennsylvania left no doubt that the protection of the doctrine of strict liability was to be extended to its fullest scope in this Commonwealth.

The language quoted from *Berkebile* established a standard of review to be applied to the facts by the jury once the court has determined that the facts alleged would support a finding that the product was defective without adequate warnings.[5] It provides no useful analysis for making an initial determination whether warnings were required and, if so, what factors should be considered in determining the nature and extent of that requirement.

■ The issue to be addressed in the case *sub judice* is whether the trial court correctly concluded that the facts, as pleaded and presented by the plaintiff, were such as to make out a *prima facie* case in strict liability which should then have been taken to the jury.[6] That is, under the facts, were the drafts of steel unreasonably dangerous so as to be defective without hooks, instructions or warnings?

The instant case involves a claim that the product, although well manufactured, was defectively designed by reason of lack of warnings. The language of section 402A

---

5. The *Berkebile* court was not faced with the question whether the warnings were required, but dealt directly with the question whether the required warnings were adequate. The opinion states:

   As an example, the failure of a seller of ordinary knives to warn of dangerous propensities can not be considered the proximate cause of a consumer's cutting his finger since the potentiality of its danger is generally known and recognized. It is sometimes necessary to consider whether *any* warnings are required. Here the only issue was the adequacy of warnings since FAA regulations and the defendant's own inclusion of some warnings in regard to the autorotation system demonstrated the necessity of warnings. The issue of necessity and adequacy of warnings and instructions for use must also be considered in light of any contradictory promotional activities on the part of the seller. *Incollingo* [*v. Ewing*, 444 Pa. 263 [444 Pa. 299] 282 A.2d 206 (1971).]
   462 Pa. at 103, 337 A.2d at 903.

6. When a products liability claim is pleaded the trial judge makes a threshold determination whether as a matter of social policy the case is appropriate for treatment under the rubric of products liability. In making this determination the judge acts as a combination social philosopher and risk-utility economic analyst. *Carrecter v. Colson Equipment Co.*, 346 Pa.Super. at 101 n. 7, 499 A.2d at 330 n. 7.

creates liability for a product in a *defective condition* which is *unreasonably dangerous.* In *Sherk v. Daisy–Heddon,* 285 Pa.Super. 320, 427 A.2d 657 (1981), *rev'd on other grounds,* 498 Pa. 594, 450 A.2d 615 (1982) [7], a panel of this Court, per Cercone, [then] P.J., set forth expansively the analysis to be applied in cases where a plaintiff claims a product is "defective" and "unreasonably dangerous" without adequate warnings. We quote:

> Comment (i) to Section 402(A) elaborates on the concept of "unreasonable danger" for Section 402(A) purposes. In relevant part, comment (i) says,

>> "The rule stated in this section applies only where the defective condition of the product makes it unreasonably dangerous to the user or consumer.... The article sold must be *dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics."* (Emphasis added.)

> In keeping with comment (i), one treatise summarizes the rule for the manufacturer's duty to warn under Section 402(A) thusly:

>> "The rule stated in § 402(A) of the Restatement is held to apply only when the product is in a condition not contemplated by the ultimate consumer, *and dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.* Thus, a product containing an obvious hazard is considered neither defective nor unreasonably dangerous, and therefore there is no

---

7. In *Sherk v. Daisy–Heddon,* 498 Pa. 594, 450 A.2d 615 (1982), the Pennsylvania Supreme Court upheld a jury verdict in favor of the defendant, manufacturer of a BB gun which caused injury. While the court's analysis in that case turned on whether the lack of instructions was the "proximate cause" of the injury, and not whether instructions were necessary, the court approved this court's conclusion that the trial court had erred in excluding evidence of whether the danger or potentiality of danger of the gun was generally known and appreciated in the community of which plaintiff was a member. *Id.,* 498 Pa. at 597 n. 2, 450 A.2d at 617 n. 2.

duty to warn of such dangers, even under strict liability principles." (Emphasis added.)

Comment (j) to § 402(A) points out that some products may be defective and unreasonably dangerous within the meaning of this section if the seller does not include a warning concerning the danger with the product.[8] Although comment (j) focuses on warnings relative to the dangers of ingredients in food and drugs, without question this duty extends to other types of products, including equipment and household goods.[9]

On the basis of comments (i) and (j), one treatise summarizes the rule for the duty to warn thusly:

> "The test to determine whether a danger is obvious is an objective one, not dependent upon the actual knowledge of the user, or his actual awareness of the danger. *It is the knowledge and realization of the danger that would be possessed by the ordinary consumer who purchases or uses the product* ... If the product is one customarily used by children, the danger must be one which children would be likely to recognize and appreciate in order to prevent them from recovering for a product related injury on the grounds that the danger was open and obvious." [10]

Without further elaboration, it is evident that under § 402(A) the necessity of a warning by the manufacturer depends in part upon the knowledge of the "ordinary consumer who purchases it, with the ordinary knowledge

---

**8.** In relevant part, comment (j) reads:
"In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use.

＊　＊　＊　＊　＊　＊

Where warning is given, the seller may reasonably assume that it will be read and heeded, and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous."

**9.** Prod.Liab.Rep. (CCH) § 4095 (1979).

**10.** W. Kimble & R. Lesher, Products Liability § 196 (1979) (footnote omitted) (emphasis added).

common to the community" as to the characteristics of the product.[11]

Appellee in its brief contends that the perceptions of the community regarding the product at issue have been ruled irrelevant under § 402A by the Supreme Court's decision in *Azzarello v. Black Brothers, Co., Inc.*, 480 Pa. 547, 391 A.2d 1020 (1978). Appellee's interpretation of *Azzarello* is incorrect. In *Azzarello*, the Supreme Court noted that there are two requirements set forth in Section 402A for liability—that the product be "in a defective condition," and that it be "unreasonably dangerous." However, the *Azzarello* court recognized that there are difficulties inherent in giving a jury instruction using the term "unreasonably dangerous." The *Azzarello* court cited the California Supreme Court in *Cronin v. J.B.E. Olson Corp.*, 8 Cal.3d 121, 104 Cal.Rptr. 433, 442, 501 P.2d 1153, 1162 (1972), in which the *Cronin* court disapproved the "unreasonably dangerous" terminology because it "rings of negligence." The *Cronin* court further said:

> "We recognize that the words 'unreasonably dangerous' may also serve the beneficial purpose of preventing the seller from being treated as the insurer of its products. However, we think that such protective end is attained by the necessity of proving that there was a defect in the manufacture or design of the product and that such defect was a proximate cause of the injuries. Although the seller should not be responsible for all injuries involving the use of its products, it should be liable for all injuries proximately caused by any of its products which are adjudged 'defective.'" *Id.* at 133, 104 Cal.Rptr. at 442, 501 P.2d at 1162. (footnote omitted).

Therefore, the *Cronin* court, while acknowledging that § 402A employs the term "unreasonably dangerous" to indicate that the seller should not be treated as the

---

11. For a discussion of the consumer expectation test see, A. Weinstein, A. Twerski, H. Piehler & W. Donaher, Products Liability and the Reasonably Safe Product, 52–53 (1978).

insurer of its product, nonetheless rejected the use of this term in a products liability case because the term "rings of negligence." The *Azzarello* court similarly ruled that the term "unreasonably dangerous" should not be used when instructing the jury in a products liability case because it is inadequate to guide a lay jury. Appellee would now have us extend the holding of *Azzarello* to new limits, arguing that since comment (i) to section 402A is captioned "Unreasonably Dangerous," and that since the consumer expectation test is discussed in comment (i), then the *Azzarello* decision implicitly rejected the consumer expectation test. Appellee is in error. The California courts have addressed this identical issue in cases subsequent to the *Cronin* decision and those decisions have delineated the importance and necessity of the consumer expectation test as one method of defining the meaning of "defective" in a products liability context.

*Sherk v. Daisy–Heddon,* 285 Pa.Super. at 327–30, 427 A.2d at 660–61.

We note that in the Restatement comment g, entitled "Defective condition", it is stated: "The rule stated in this Section applies only where the product is, at the time it leaves the seller's hands, in a condition *not contemplated by the ultimate consumer,* which will be unreasonably dangerous to him."

The emphasis is upon the consumer's reasonable expectation of buying a product that is reasonably safe. The ordinary consumer evaluates a product in terms of safety, recognizing that virtually no product is or can be made absolutely safe.

■ The liability arising from inadequate warnings is not "strict" in the same sense as liability arising from a defect due to fault in manufacture, since a determination of whether an object is unreasonably dangerous without adequate warnings, and thus defective, necessarily involves negli-

gence principles such as reasonableness or foreseeability [12]. As further indication that the rule of reasonableness applies with respect to inadequate warning cases, it has been held that liability attaches only if the supplier knew, or by the use of its special skill and knowledge should have known, of the danger [13], or where the dangerous use to which the product might be put was reasonably foreseeable [14], subject to the caveat that a product is not defective without warnings where the danger is obvious or where the injured person, his employer, or an expert or technically trained person under whom he was working, knew of the danger.[15] It is, therefore, not surprising that particular cases in which recovery has been sought under the doctrine of strict liability in tort for inadequate warning turn generally on the facts of each particular case. *See generally,* Korpela, *supra.*

In *Azzarello v. Black Brothers Co., supra,* the Pennsylvania Supreme Court recognized that the test of reasonableness might be appropriate in the initial determination whether warnings were required. In that case, the jury

12. In *Sweitzer v. Demster Systems,* 372 Pa.Super. 449, 539 A.2d 880 (319 Harrisburg 1987, filed March 31, 1988), a panel of this court opined: "The role of foreseeability in a product liability case is consistent with the broad and sound social policy underlying § 402A ..." Slip op. at 4.

13. In *Incollingo v. Ewing,* 444 Pa. 263, 299, 282 A.2d 206 (1971), the Pennsylvania Supreme Court determined that strict liability was not applicable to a case which turned upon the adequacy of a warning with respect to the dangerous side effects of a drug. Rather, the court held the case was properly decided on the basis of negligence principles as set forth in section 388 of the Restatement (Second) of Torts.

14. In *Holloway v. J.B. Systems, Ltd.,* 609 F.2d 1069 (3d Cir.1979), the court, applying Pennsylvania law, properly instructed the jury to consider whether user's actions were so highly extraordinary as not to have been reasonably foreseeable to the manufacturer.

15. In *Sherk v. Daisy–Heddon, supra,* 498 Pa. 594, 450 A.2d 615, a youth was killed when shot by a BB gun manufactured by the defendant. In determining that the case was improperly tried under a theory of strict liability, the Supreme Court stated:
"Where, as here, the lethal propensity of a gun was known or should have been known to the user, liability cannot be imposed upon the manufacturer merely because the manufacturer allegedly has failed to warn of that propensity." *Id.,* 498 Pa. at 600, 450 A.2d at 618.

returned a judgment for defendant. Plaintiff, as appellant, argued that the use of the term "unreasonably dangerous" in the jury instructions was misleading in that the term suggested the notion of negligence which, of course, is not an allowable consideration in strict liability. The Supreme Court, affirming a Superior Court decision and following rationale set forth in *Berkebile, supra,* concluded that the term "unreasonably dangerous" was improperly inserted in the jury instructions and granted plaintiff a new trial. However, the Court did indicate that the term "unreasonably dangerous" is a useful starting point in the initial determination in predicting liability in this area of the law. The Supreme Court stated:

> Thus the mere fact that we have approved Section 402A, and even if we agree that the phrase "unreasonably dangerous" serves a useful purpose in *predicting* liability in this area, it does not follow that this language should be used in framing the issues for the jury's consideration. Should an ill-conceived design which exposes the user to the risk of harm entitle one injured by the product to recover? Should adequate warnings of the dangerous propensities of an article insulate one who suffers injuries from those propensities? When does the utility of a product outweigh the unavoidable danger it may pose? These are questions of law and their resolution depends upon social policy. Restated, the phrases "defective condition" and "unreasonably dangerous" as used in the Restatement formulation are terms of art invoked [to determine] when *strict liability* is appropriate. It is a judicial function to decide whether, under plaintiff's averment of the facts, recovery would be justified; and only after this judicial determination is made is the cause submitted to the jury to determine whether the facts of the case support the averments of the complaint. They do not fall within the orbit of a factual dispute which is properly assigned to the jury for resolution. A standard suggesting the existence of a "defect" if the article is unreasonably dangerous or not duly safe is inadequate to guide a lay jury in resolving these questions.

*Id.,* 480 Pa. at 558, 391 A.2d at 1026 (emphasis in original). However, after citing this language, the *Azzarello* court provided no further analysis as to why liability should attach but merely assumed that liability should attach and proceeded to discuss the appropriate jury instruction.

Ultimately, this court must review the facts as presented by the plaintiff and make a determination whether section 402A, as interpreted by the courts, was intended to be applied to the specific facts of that case. In doing this, common sense dictates our conclusion that strict liability was not a proper legal theory for plaintiff's case.

In the case at hand we are called upon to determine when liability should attach where a manufacturer of large, irregularly shaped, heavy objects shipped those objects without providing hooks or shipping instructions. That is, were the drafts of steel "defective" as being "unreasonably dangerous" so as to impose a duty upon Chicago Bridge and Iron to provide shipping aides and instructions? The object was obviously difficult to move and dangerous if dropped. Manufacturer hired a shipping company to move the object. Does this scenario support a finding that the product was unreasonably dangerous without shipping aids or instructions? Our answer is "No" as to respond otherwise would place the manufacturer in the position of insurer rather than guarantor of the object. Examples provided by appellant in its brief are illustrative:

> Until the present case ... no-one has suggested that automobiles being hoisted aboard ships for movement overseas must be designed with hooks or eye-lifts on their roofs. Nor are pianos designed with handles so that they may be more easily lifted up steps. Precast concrete slabs used to construct office buildings are not designed with hooks for lifting.

As defined in the comments to section 402A, a "defective condition" is "a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him." *See,* section 402A, comment g. Thus, "defective condition" is the description of the product, but "unrea-

sonably dangerous" is the test to be applied. *See general-ly*, Wade, *supra*. A review of the plethora of cases applying inadequate warnings will reveal that, in each case, the danger was one which was latent or not apparent to the consumer or user of the product. *Accord: Berkebile v. Brantly Helicopter, Corp., supra* (alleged inherent defect that the time required to activate autorotation system was short and manufacturer failed to warn pilot); *Azzarello v. Black Bros. Co., Inc., supra* (alleged inherent defect was the lack of safety device which allowed plaintiff's hand to be caught in machine); *Incollingo v. Ewing, supra* (alleged failure of drug manufacturer to sufficiently warn of the dangerous effects of a certain drug); *Dambacher v. Mallis*, 336 Pa.Super. 22, 485 A.2d 408 (1984) (failure to warn of nonobvious danger that radial tire, mixed with non-radial tires, might be unduly dangerous); *Staymates v. ITT Holub Industries*, 364 Pa.Super. 37, 527 A.2d 140 (1987) (failure to warn against nonobvious danger (latent defect) in dust collector); *Carrecter v. Colson Equipment Co., supra* (truck defective without adequate warning of maximum load capacity at which the truck could be maneuvered without placing undue stress on the user's back). We would suggest that the previously quoted language from *Berkebile, infra* at 909, cannot be used to make the initial determination as to whether inadequate warnings can be a basis of liability. That language must be limited to situations where the danger or potential of danger is not readily recognizable to the user or consumer.[16]

**16.** There is a general rule in the appellate courts of this Commonwealth to rest a decision on the most narrow grounds possible. *See Burns Mfg. Co. Inc. v. Boehm*, 467 Pa. 307, 356 A.2d 763 (1976). We do not consider questions which have been rendered moot by our decisions, *Foley v. Clark Equipment Co.*, 361 Pa.Super. 599, 523 A.2d 379 (1987), nor do we consider questions which may not arise upon remand "unless exceptional circumstances exist or questions of great public importance are involved." *Simmons v. St. Clair Memorial Hospital*, 332 Pa.Super. 444, 458, 481 A.2d 870 (1984) (quoting *Harger v. Caputo*, 420 Pa. 528, 532, 218 A.2d 108, 111 (1966)).

To sustain a cause of action under section 402A, a plaintiff must first establish that a "defective product" was involved. It is only after determining that issue, in plaintiff's favor, that we must approach the second element of a 402A action and determine whether an "ultimate

In the case at hand the trial court specifically left the question of inadequate warnings to the jury by instructing "whether or not the defendant was required to give warnings and/or instructions in the case is for you, the jury, to determine."

▇▇▇▇▇ The lower court erred in failing to determine whether the inherent danger of moving the drafts of steel was evident not only to the decedent (subjectively) or to the community as a whole (objectively).[17] We take judicial notice of the fact that the inherent danger in moving the drafts was obvious to all parties involved and we conclude that the lower court erred in denying appellant's motion for judgment notwithstanding the verdict. Accordingly, judgment is vacated and the case dismissed.

POPOVICH, J., files a concurring opinion.

POPOVICH, Judge, concurring:

While I concur with the majority's holding that "the case was improperly tried under the theory of strict liability," I believe that the majority incorrectly declined to address the primary issue in a thorough products liability analysis:

user or consumer" was injured. *See Pegg v. General Motors Corporation,* 258 Pa.Super. 59, 391 A.2d 1074 (1978). Our decision herein rests upon the conclusion that a "defective product" was not involved. Contrary to the Concurring Opinion, we have concluded that it would not be proper, in this case, to address appellant's argument that appellee's decedent was not an ultimate user or consumer. By this opinion we do not wish to give the impression, *sub silentio,* that that argument is meritless. Rather, we leave it to another case to be decided straight on.

17. In *Staymates v. ITT Holub Industries,* 364 Pa.Super. 37, 527 A.2d 140 (1987), a panel of this Court properly concluded that if a defendant in a strict liability case asserted assumption of the risk as a defense, the defendant had the burden of showing the subjective awareness of the defect by the injured party. That is a different analysis than in our case. Likewise, *Books v. Pennsylvania Power & Light Co.,* 362 Pa.Super. 100, 523 A.2d 794 (1987), is distinguishable. In *Books,* a panel of this Court reversed a grant of summary judgment concluding that the victim's subjective knowledge of a latent danger created a genuine issue of fact. That case involved subjective knowledge of a latent danger and went to assumption of the risk as a defense and proximate cause.

whether the injured party is an "ultimate user or consumer" and thereby entitled to pursue a strict liability claim.[1] Notably, this question of whether an intermediate shipper or handler of a product is considered to be an "ultimate user or consumer" has not been addressed by the courts of this Commonwealth. Instantly, I would hold that the appellee, an intermediate shipper of the product in question, is not a "user or consumer" within the meaning of § 402A of the Restatement (Second) of Torts which was adopted by our Supreme Court in *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966). For the aforementioned reason, I would find that the lower court erroneously concluded that the facts, as pleaded and presented by the plaintiff, made out a *prima facie* case in strict liability and, as such, should not have been sent to the jury.

The Restatement (Second) of Torts, § 402A, specifically states:

§ 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the *ultimate user or consumer*, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it was sold. (emphasis added).

The language "ultimate user or consumer" is pervasive throughout products liability case law. *See Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 337 A.2d 893 (1975); *Burch v. Sears, Roebuck and Co.*, 320 Pa.Super. 444, 467 A.2d 615 (1983); *Dickerson v. Brind Truck Leasing*, 362 Pa.Super. 341, 524 A.2d 908 (1987). In *Schriner v. Pa.*

---

**1.** The majority in footnote # 16 expressly declined to discuss this issue. By so doing, they have implied that an intermediate shipper may be an "ultimate user or consumer."

*Power & Light Co.,* 348 Pa.Super. 177, 501 A.2d 1128, 1132, we stated the following:

When we distill § 402A into its constituent elements, we find the following are necessary to an appropriate application of this section:

(1) a product;

(2) a sale of that product;

(3) a user or consumer;

(4) a defective condition, unreasonably dangerous; and

(5) causation—that the product caused physical harm to the *ultimate user or consumer,* or to his property.

*If any of these requisite elements remains unsatisfied, § 402A has no applicability.* (Emphasis added.)

While Pennsylvania case law has not addressed the issue of whether an intermediate shipper is considered an "ultimate user or consumer" of the product it is handling, common sense dictates that a longshoreman who is merely involved in shipping massive steel plates to be used in construction of a water tank in Abu Dahbi is not an ultimate consumer of those steel plates. Consequently, § 402A is not applicable to the case at bar.

The issue of the applicability of § 402A to an injured intermediate shipper was squarely addressed by a Washington appellate court in *Spellmeyer v. Weyerhaeuser Corp.,* 14 Wash.App. 642, 544 P.2d 107 (1975). Therein, a longshoreman sued a manufacturer under a theory of strict liability for failure to prepare bales of wood pulp properly for shipping. The Washington Court of Appeals, in affirming the summary judgment granted against the strict liability claimant, stated:

Imposition of strict liability is premised on the sound policy consideration that the manufacturer who markets his product for use and consumption by the general public is best able to bear the risk of loss resulting from a defective product. The thrust of Section 402A is, accordingly, to protect the "ultimate user or consumer" of the

product.... In the instant case Weyerhauser produced and packaged a raw material in an intermediate state, which was stored awaiting shipment to another processor. It did not harm or endanger any "ultimate user or consumer"; only expert loaders and expert carriers were required to deal with it. We therefore conclude that, because of the character of the "product" and the status of the plaintiff, the policy considerations which support imposition of strict liability in other contexts are too severely diluted here and dismissal was correct as to the strict liability theory.

*Spellmeyer*, 544 P.2d 109–110

Similarly, the instant appellee is not a member of the class of ultimate users and consumers which § 402A was developed to protect.

Moreover, Judge Montemuro of this Court, in his dissenting opinion in *R.B. Equipment v. Williams, Sheilds, Snyder and Goas*, 304 Pa.Super. 31, 450 A.2d 85 (1982), opined that a middleman handling a product does not qualify as an "ultimate user or consumer" and, therefore, § 402A is inapplicable to a middleman's claim for economic damages. 450 A.2d at 88 (The majority did not reach the issue of whether § 402A applied because the appeal was quashed as interlocutory.)

The implication that an intermediate shipper may be considered an "ultimate user or consumer" of the products which he transports is an extension of § 402A far beyond that contemplated by its drafters and our courts. Such an extension of § 402A would merely subject manufacturers to a myriad of product liability claims for injuries sustained by intermediate shippers of their product. Further, the effects of allowing such an appeal to proceed under § 402A would undermine Workman's Compensation Law. In sum, I find that § 402A is wholly inapplicable to the case at bar. As stated by the majority, "[The case] would have been more properly based in negligence and not strict liability."