## Johnston v. J.C. Ehrlich Co. Inc.

*Mark R. Cuker,* for plaintiffs.

*Joseph M. Cincotta,* for defendant Dow Chemical Company.

*Mitchell S. Pinsly,* for defendant J.C. Ehrlich Co. Inc.

WALLITSCH, *J.,* November 22, 1991—We have before us a motion for summary judgment filed by defendant Dow Chemical Company, t/a Dow Chemical U.S.A., as well as a motion for partial summary judgment filed by defendant J.C. Ehrlich Co. Inc.

On October 1, 1986, pursuant to an arrangement between plaintiffs, James and Betty Johnston, and Ehrlich, one of Ehrlich's employees sprayed a pest control formulation containing Dursban L.O., an insecticide, and Precor 5E, an insect growth regulator, in the plaintiffs' home. Four to six hours later, one of the plaintiffs, Betty Johnston returned home and was exposed to this flea infestation spray. As a result of that exposure, she contends that she suffered chronic respiratory problems, including constriction and hyper-irritability of the lungs, periodic "asthma-like" attacks, and other maladies. As a result of this occurrence and the alleged damages, plaintiffs have filed suit against the defendants seeking compensatory and punitive damages for the alleged injuries.

Dow has filed a motion for summary judgment and, in the alternative, partial summary judgment on the issue of punitive damages. Dow also suggests, and the plaintiffs agree, that if the claims of plaintiff Betty Johnston are dismissed, then plaintiff James Johnston's derivative claim for loss of consortium should also be dismissed.

Ehrlich contends that plaintiffs' claim for failure to warn, as well as the claim for punitive damages, should be dismissed. Apparently, Ehrlich concedes that there is a genuine issue of material fact concerning the plaintiffs' action for negligence in the application of the pesticide.

In deciding whether we may grant Dow's motion for summary judgment and Ehrlich's motion for partial summary judgment, we are guided by well-established principles of law concerning such motions. Summary judgment should be granted only in cases where the entitlement to such relief is clear. Pennsylvania Rule of Civil Procedure 1025(b) provides that summary judgment should be granted only if there is no genuine issue of material fact. *Consumer Party of Pennsylvania v. Commonwealth,* 510 Pa. 158, 175, 507 A.2d 323, 331 (1986). The court must examine the record in the light most favorable to the non-moving party and resolve all doubts in favor of that party. *Held v. Neft,* 352 Pa. Super. 195, 197, 507 A.2d 839, 840 (1986); quoting *Taylor v. Tukanowicz,* 290 Pa. Super. 581, 435 A.2d 181 (1981). Our role is to evaluate whether any factual issues exist which would prevent us from granting defendants' motions.

Both Dow and Ehrlich have similar arguments concerning the plaintiffs' "failure to warn" claim and we will address those arguments initially. On May 3, 1990, plaintiffs' only expert, George B. Koelle, M.D., Ph.D., issued a report which has been made part of the record. Dr. Koelle, professor emeritus of the Department of Pharmacology at the University of Pennsylvania School of Medicine, apparently formed an opinion, based upon a review of correspondence, medical records, insecticide labels and certain other information, that "Mrs. Johnston suffered an idiosyncratic reaction to chlorpyrifos." The

doctor defined "idiosyncrasy" by stating that it is a reaction that is "unpredictable; persons who so respond are normal in all other respects, but show a greater response to the compound than that of the average population." Defendants contend that, because Mrs. Johnston's reaction was idiosyncratic, they cannot be liable for failure to warn the plaintiffs of the possibility of such a rare, unpredictable, idiosyncratic reaction.

Plaintiffs' failure-to-warn claim is actually composed of three separate theories: negligence, breach of warranty and strict liability under section 402A of the Restatement (Second) of Torts. Each of these theories of recovery, which will be addressed separately, must fail due to the fact that Mrs. Johnston suffered an idiosyncratic reaction to the chlorpyrifos contained in the pest control formulation.

In order to establish a prima facie case for plaintiff' section 402A strict liability claim, they must show that (1) the product was in defective condition upon delivery, (2) the product was unreasonably dangerous to the consumer, and (3) the product was the cause of the injury sustained. *Morris v. Pathmark Corp.*, 405 Pa. Super. 274, 277-78, 592 A.2d 331, 333 (1991); *Ellis v. Chicago Bridge & Iron Co.*, 376 Pa. Super. 220, 226, 545 A.2d 906, 909 (1988). Specifically, in a strict liability case for failure to warn, the plaintiff must prove that the lack of warning rendered the product dangerous and was the proximate cause of the injury sustained. *Morris* at 278, 592 A.2d at 333.

Determinations of whether a warning is adequate and whether a product is defective due to inadequate warnings are questions of law to be answered by a trial judge. *Mackowick v. Westinghouse Elec. Corp.*, 525 Pa. 52, 56, 575 A.2d 100, 102 (1990). Cases involving inadequate warnings generally turn on the facts of each

particular case. *Ellis,* 376 Pa. Super. at 233, 545 A.2d at 913.

Both Dow and Ehrlich contend that the flea spray was not defective because the reaction suffered by Mrs. Johnston was idiosyncratic and, as a result, they cannot be liable for failure to warn of the possibility of such a rare, unpredictable, idiosyncratic reaction. Among other cases cited by the defendants, they argue that the case of *Morris v. Pathmark Corp.* fully supports this position.

The appellant in *Morris* filed suit after suffering an allergic reaction following the use of a hair straightening product. The only evidence presented in the case was the unusual allergic reaction to the product. As a result, the Pennsylvania Superior Court rejected the argument that the product was defective by it being unreasonably dangerous to persons susceptible to allergic reactions to its ingredients because there was no warning to patch the product before using it. The court relied on comment (J) to section 402(A) of the Restatement (Second) of Torts which provides:

"(J) *Directions or warning*—In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use. *The seller may reasonably assume that those with common allergies, as for example to eggs or strawberries, will be aware of them, and he is not required to warn against them. Where, however, the product contains an ingredient to which a substantial number of the population are allergic, and the ingredient is one whose danger is not generally known, or if known is one which the consumer would reasonably not expect to find in the product, the seller is required to give warning against it, if he has knowledge or by the application of reasonable, developed*

*human skill and foresight should have a knowledge, of the presence of the ingredient and the danger.* Likewise in the case of poisonous drugs, or those unduly dangerous for other reasons, warning as to use may be required." *Morris* at 278, 592 A.2d at 333-34. (emphasis in original)

The court found that the manufacturer could not be held liable for failure to warn where the allergic reaction could not have been reasonably foreseen. In *Morris*, the appellant failed to present evidence that the product had been unsafe or likely to cause harm to a normal consumer or to show that the product contained an ingredient to which a significant number of persons were allergic. In such a case, a defendant will not be liable merely because the plaintiff suffered an allergic reaction, rather the product must be shown to have been defective. *Morris* at 279, 592 A.2d at 334.

Based upon the foregoing, we will grant Dow and Ehrlich's motions for summary judgment as to the plaintiffs' strict liability claim for failure to warn. As mentioned, Dr. Koelle reached the conclusion that Mrs. Johnston suffered an idiosyncratic reaction to the chlorpyrifos found in the flea spray. No evidence has been presented that the insecticide was likely to cause harm to a normal consumer or that the product contained an ingredient to which a significant number of persons were allergic. As the Pennsylvania Superior Court stated:

"Since almost every industrial product would appear to have some potential for inflicting harm, and since instructions and warnings cannot reasonably be required in the marketing of every product, a rule as to standards of conduct must be applied in determining the circumstances under which a warning or instruction is required so as to keep every product from being considered

'defective' without the warning and to keep the manufacturer from assuming the rule of insurer rather than guarantor of its product." *Ellis,* 376 Pa. Super. at 225-26, 545 A.2d at 909.

If Mrs. Johnston's idiosyncratic reaction was enough for the flea spray to be considered defective, Dow and Ehrlich would be forced to assume the rule of insurers. For this reason and the others previously discussed, summary judgment will be granted for Dow and Ehrlich as to plaintiffs' section 402A strict liability claim for failure to warn.

For similar reasons, plaintiffs' negligent failure-to-warn claim must be dismissed. Our analysis for this claim is based upon the conduct of the defendant rather than the product of the defendant. See *Wenrick v. Schloemann-Siemag Aktiengesellschaft,* 523 Pa. 1, 564 A.2d 1244 (1989). Therefore:

"[W]here, as here, a claim is brought under the auspices of a 'negligent failure-to-warn,' it is appropriate to view the complaint as one charging improper *conduct,* and not one of making a defective *product,* despite the arguable similarities between such claims." *Hartford Mutual Insurance Co. v. Moorhead,* 396 Pa. Super. 234, 251, 578 A.2d 492, 501 (1990). (emphasis in original)

Defendants "will be held liable only if (they) fail[ed] to exercise reasonable care to inform the one for whose use the product is supplied of the facts which make it likely to be dangerous." *Brecher v. Cutler,* 396 Pa. Super. 211, 219, 578 A.2d 481, 485 (1990). In our case, plaintiff suffered from an allergic reaction to the chlorpyrifos in the flea spray. There is nothing of record to show that defendant's conduct was improper by not warning plaintiff of the presence of chlorpyrifos. Even plaintiff's own medical expert said plaintiff's reaction

was idiosyncratic or unpredictable. Therefore, no fact finder could reasonably infer negligence on the part of defendants for a negligent failure-to-warn. Summary judgment is proper for both defendants as to this count.

Finally, plaintiffs' breach of warranty claim must also be dismissed. Simply put, a seller cannot be liable for breach of an implied warranty because of a harmful effect due to an individual idiosyncrasy on the part of the buyer. *Morris* at 280, 592 A.2d at 334. Furthermore, plaintiffs have failed to allege any facts under which we could possibly find that Ehrlich or Dow expressly warranted that Mrs. Johnston would not suffer an idiosyncratic reaction.

Dow and Ehrlich further argue that plaintiffs have not shown that either defendant has acted with such outrageous conduct to, as a matter of law, entitle them to continue to pursue a claim for punitive damages. We agree. The Pennsylvania appellate courts have adopted section 908(2) of the Restatement (Second) of Torts concerning the awarding of punitive damages. See e.g. *Smith v. Celotex Corp.,* 387 Pa. Super. 340, 343, 564 A.2d 209, 210 (1989), *alloc. den.,* 571 A.2d 383. Under that section of the Restatement, "punitive damages are awarded only for outrageous conduct, that is, for acts done with a bad motive or with a *reckless indifference* to the interest of others." *Martin v. Johns-Manville Corp.,* 508 Pa. 154, 171-72, 494 A.2d 1088, 1097-98 (1985). (emphasis in original) In fact, the Pennsylvania Supreme Court, in *Martin,* held that punitive damages are not justified if there is no more than gross negligence. *Martin* at 172, 494 A.2d at 1098. The record fails to suggest any act of either defendant that would rise to such a level.

Although unnecessary because of our dismissal of plaintiffs' section 402A claims, we will briefly discuss

Ehrlich's contention that it cannot be held liable under section 402A of the Restatement (Second) of Torts because Ehrlich provided a service to the plaintiffs rather than providing a "sale of a product" within the meaning of section 402A. Ehrlich bases this contention upon the fact that the sole charge in the contract between Ehrlich and plaintiffs was deemed a "service charge." We find this unpersuasive. Instead, we adopt the rationale set forth by Federal District Judge Pollak in *Villari v. Terminix Int'l Inc.,* 663 F. Supp. 727 (E.D. Pa. 1987).

The plaintiffs in *Villari* alleged that Terminix contaminated their home with a hazardous termiticide. Like Ehrlich, Terminix argued that they provided a service and not a product. Specifically, Terminix contended that one who supplies a product in the course of performing a service cannot be held liable for defects under section 402A. The *Villari* court classified the contract between the Villaris and Terminix as one calling for a hybrid sale-service transaction. The court then proceeded to state that the supplier of a service can be held liable under section 402A if, in the course of providing the service, a defective product is supplied. See also, *Abdul-Warth v. Arthur G. McKee and Co.,* 488 F. Supp. 308, 310 (E.D. Pa. 1980), aff'd, 642 F.2d 440 (3rd Cir. 1981); *Lenly v. J&B Tire Co.,* 426 F. Supp. 1378, 1379 (W.D. Pa. 1977). The court reasoned that to require a consumer of the product to pursue the manufacturer directly would belie one of the goals of products liability law; to respond to the realities of the distribution of products in a changing world. *Villari,* 663 F. Supp. at 730. Furthermore, the rationale for imposing strict products liability upon the supplier

of the product in this setting is particularly strong where, as here, the alleged defect is a failure to warn. *Villari,* 663 F. Supp. at 731 n.2.

In our opinion, if Ehrlich used a defective product in its process of attempting to eradicate pests, it should be held as responsible as the supplier of any other product. This is not a situation where defendant Ehrlich is providing *only* a service. Since it supplied a product in the course of providing services, we believe that section 402A is applicable. Therefore, we deny Ehrlich's partial motion for summary judgment on this ground, but grant it for the other reasons stated.

For all the foregoing reasons, Ehrlich's motion for partial summary judgment is granted and plaintiffs' claims for failure to warn and for punitive damages against Ehrlich are dismissed. For the same reasons, Dow's motion for summary judgment is granted and plaintiffs' complaint as to Dow is dismissed.

## ORDER

Now, November 22, 1991, upon consideration of the briefs of the parties, after oral argument, and for the reasons expressed in the accompanying opinion, it is ordered that defendant J.C. Ehrlich Co. Inc.'s motion for partial summary judgment is granted and plaintiffs' claims for failure to warn and for punitive damages against defendant J.C. Ehrlich Co. Inc. are dismissed.

It is further ordered that defendant Dow Chemical Company's motion for summary judgment is granted and plaintiffs' complaint as to defendant Dow Chemical Company is dismissed.