905 F.2d 793
 59 USLW 2088, Prod.Liab.Rep.(CCH)P 12,482
 Daniel A. WILLIS; Carolyn W. Willis; Herman L. Mensing,
Jr.; Frances K. Mensing; Vincent H. Lewis; Ruby
B. Lewis; Elwood F. Hamlet; Lois D.
Hamlet, Plaintiffs-Appellees,
and
Richard L. Taylor; Mary S. Taylor; William F. Cobb;
Lillie P. Cobb; Roy B. Bass; Susan R. Bass, Plaintiffs,
v.
RAYMARK INDUSTRIES, INC., Defendant-Appellant,
and
Owens-Corning Fiberglass Corporation; The Celotex
Corporation; Eagle-Picher Industries, Inc.; Armstrong
World Industries, Inc.; GAF Corporation; Keene
Corporation; Standard Insulations, Inc.; Owens-Illinois,
Inc.; H.K. Porter Company, Inc.; Fibreboard Corporation;
Crown Cork & Seal Company, Inc.; Combustion Engineering,
Inc.; Pittsburgh Corning Corporation, Defendants.
Daniel A. WILLIS; Carolyn W. Willis; Herman L. Mensing,
Jr.; Frances K. Mensing; Vincent H. Lewis; Ruby
B. Lewis; Elwood F. Hamlet; Lois D.
Hamlet, Plaintiffs-Appellees,
and
Richard L. Taylor; Mary S. Taylor; William F. Cobb;
Lillie P. Cobb; Roy B. Bass; Susan R. Bass, Plaintiffs,
v.
The CELOTEX CORPORATION, Defendant-Appellant,
and
Raymark Industries, Inc.; Owens-Corning Fiberglass
Corporation; Eagle-Picher Industries, Inc.; Armstrong
World Industries, Inc.; GAF Corporation; Keene
Corporation; Standard Insulations, Inc.; Owens-Illinois,
Inc.; H.K. Porter Company, Inc.; Fibreboard Corporation;
Crown Cork & Seal Company, Inc.; Combustion Engineering,
Inc.; Pittsburgh Corning Corporation, Defendants.
Richard L. TAYLOR; Roy B. Bass, Plaintiffs-Appellants,
and
Daniel A. Willis; Carolyn W. Willis; Herman L. Mensing,
Jr.; Vincent H. Lewis; Ruby B. Lewis; Elwood F. Hamlet;
Lois D. Hamlet; Mary S. Taylor; William F. Cobb; Lillie
P. Cobb; Susan R. Bass; Frances K. Mensing, Plaintiffs,
v.
RAYMARK INDUSTRIES, INC.; The Celotex Corporation,
Defendants-Appellees,
and
Owens-Corning Fiberglass Corporation; Eagle-Picher
Industries, Inc.; Armstrong World Industries, Inc.; GAF
Corporation; Keene Corporation; Standard Insulations,
Inc.; Owens-Illinois, Inc.; H.K. Porter Company, Inc.;
Fibreboard Corporation; Crown Cork & Seal Company, Inc.;
Combustion Engineering, Inc.; Pittsburgh Corning
Corporation, Defendants.
 Nos. 89-1704 to 89-1706.
 United States Court of Appeals,
Fourth Circuit.
 Argued Jan. 9, 1990.
Decided June 15, 1990.
 
 David Charles Bowen, Willcox & Savage, P.C. (Bruce T. Bishop and Stephen R. Jackson, on brief), Norfolk, Va., for defendants-appellants.
 Brent Marcus Rosenthal, Baron & Budd, P.C., Dallas, Tex. (Jonathon A. Smith-George, Patten, Wornom & Watkins, Newport News, Va., on brief), for plaintiffs-appellees.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and RUSSELL and HALL, Circuit Judges.
 K.K. HALL, Circuit Judge:
 
 
 1
 The Celotex Corporation appeals from judgments entered after a jury trial in favor of four former insulation workers and their wives[1] on their claims for asbestos-related injuries. Two other plaintiffs, Roy B. Bass and Richard L. Taylor, cross-appeal from the district court's denial of their motions for new trials after judgment was entered on jury verdicts against them. Finding no error, we affirm.
 
 I.
 
 2
 Seven former employees of E.I. duPont de Nemours and Company ("duPont") at the Spruance Plant in Richmond, Virginia, filed an action in the District Court for the Northern District of Texas against fourteen manufacturers of asbestos-containing materials. This case was transferred to the Eastern District of Virginia and consolidated with similar actions filed by other former duPont employees. The consolidated case was then divided into two sets of six cases each. This appeal concerns the six-case set which went to trial in Norfolk in November 1988.
 
 
 3
 The employees' action claimed compensatory and punitive damages on the grounds that the manufacturers supplied asbestos-containing products to duPont's Spruance Plant without warning the employees of the possible adverse health effects. Five of the employees had worked as insulators for duPont, a job which required them to handle the asbestos-containing products on a regular basis. Prior to trial, each of the defendant manufacturers except Celotex and Raymark Industries, Inc. settled with each of the plaintiffs.
 
 
 4
 After a jury trial, judgment was entered on the verdicts against Celotex and Raymark and in favor of four of the employees and their wives as follows: Vincent H. Lewis--$150,000; Herman L. Mensing--$300,000; Elwood F. Hamlet--$200,000; Daniel L. Willis--$100,000.[2] Judgment was also entered on the verdict in favor of the two manufacturers against Roy B. Bass and Richard L. Taylor, and their motion for new trial was denied. Celotex appeals,[3] and Bass and Taylor cross-appeal.
 
 II.
 
 5
 On appeal, Celotex contends that the trial court erred in refusing to permit the "sophisticated user" defense. Celotex also contends that Virginia's Statute of Repose is an absolute bar to the employees' claims. In their cross-appeal, Bass and Taylor contend that the trial court abused its discretion in denying their motion for a new trial because the evidence supporting their claims was essentially indistinguishable from that adduced by the prevailing plaintiffs. We address each of these issues in turn.
 
 
 6
 Simply stated, the sophisticated user defense may be permitted in cases involving an employer who was aware of the inherent dangers of a product which the employer purchased for use in its business. Such an employer has a duty to warn his employees of the dangers of the product, and the manufacturer is absolved of any concurrent duty to warn those same employees. Phrased another way, if the employer/purchaser has "equal knowledge" of the product's dangers, then the manufacturer may be able to rely on the employer/purchaser to protect its own employees from harm. See generally In re: Asbestos Litigation (Mergenthaler), 542 A.2d 1205 (Del.Super.Ct.1986). "Equal knowledge" alone, however, is not enough.
 
 
 7
 Virginia recognizes the sophisticated user defense. In Featherall v. Firestone Tire and Rubber Co., 219 Va. 949, 252 S.E.2d 358, 366 (1979), the Virginia court adopted the formulation of the defense set forth in Restatement (Second) of Torts Sec. 388 (1965).[4] Comment n to Sec. 388 has been incorporated into Virginia law.[5] Goodbar v. Whitehead Bros., 591 F.Supp. 552, 557 (W.D.Va.1984), aff'd, 769 F.2d 213 (4th Cir.1984). Comment n was recently considered by this Court in the context of an action very similar on its facts to that involved in the instant appeal. Oman v. Johns-Manville Corp., 764 F.2d 224 (4th Cir.), cert. denied sub nom. Oman v. H.K. Porter, 474 U.S. 970, 106 S.Ct. 351, 88 L.Ed.2d 319 (1985). Oman is dispositive of this issue.
 
 
 8
 In Oman, this Court, sitting en banc, construed Comment n as requiring the balancing of the following factors to determine the extent of a manufacturer's duty to warn:
 
 
 9
 (1) the dangerous condition of the product; (2) the purpose for which the product is used; (3) the form of any warnings given; (4) the reliability of the third party as a conduit of necessary information about the product; (5) the magnitude of the risk involved; and (6) the burdens imposed upon the supplier by requiring that he directly warn all users.
 
 
 10
 Id. at 233.
 
 
 11
 Applying this balancing test to the facts before it, the Oman court found that the product, asbestos-containing insulation materials, was "very dangerous" and that the burden on the manufacturers in placing a warning on the product was "not great." The court further found that the employer was unaware of the danger until 1964, and once it became aware, it failed to convey such knowledge to its employees. Thus, the en banc court held that the lower court did not err in refusing to give a sophisticated user instruction to the jury. Id. Celotex's efforts to distinguish Oman are unavailing.
 
 
 12
 Both Oman and the instant case involve the same type of product, asbestos-containing insulation, and indeed Celotex cites nothing in the record to show that its product was less dangerous than the Oman product. Moreover, Celotex did not contend that it would have been unduly burdensome to have placed warnings on the products. No warnings were even attempted, and Celotex may not now argue that warnings would probably have had little effect.
 
 
 13
 Celotex argues extensively that it should now be absolved of liability arising out of its failure to warn because duPont itself possessed extensive knowledge of the dangers of asbestos from at least 1960. Celotex's proffer of proof on this issue, however, does not address one critical point: whether Celotex knew the extent of duPont's knowledge during or prior to the period of the plaintiffs' exposure. Celotex may not escape liability by reconstructing the past to show merely what the employer/purchaser knew. Comment n clearly focuses on what the product manufacturer knew and the reasonableness of its reliance on the employer prior to and during the time the workers were exposed. Moreover, Celotex offers no evidence that it apprised duPont of the dangers of the insulation or that it attempted to ascertain whether duPont could reasonably be relied upon to disseminate information about the dangers of the product. The fact that an employer possesses knowledge of a product's dangers does not extinguish the manufacturer's liability unless the manufacturer can also show that it had reason to believe that the employer was or would be acting to protect the employees. Celotex has made no such showing here. The district court did not err in excluding evidence of the sophisticated user defense.
 
 III.
 
 14
 In 1964, Virginia enacted a five-year Statute of Repose which was designed to protect persons engaged in the design or construction of buildings from remote lawsuits. Va.Code Ann. Sec. 8-24.2 (1964) (current version at Va.Code Ann. Sec. 8.01-250). The Virginia courts have interpreted this statute to include "parties who furnished materials incorporated into the construction of improvements to real estate...." Cape Henry Towers v. Nat'l Gypsum, 229 Va. 596, 331 S.E.2d 476, 479 (1985). "Ordinary building materials" are improvements within the statute's ambit. Id. Celotex contends that, as an "improvement" to the duPont plant which was "furnished" by Celotex, any cause of action by the workers based on exposure during the installation of the insulation was extinguished five years after their last exposure. We disagree.
 
 
 15
 Had Celotex been sued by duPont, as owner of the building, for the cost of abating the hazards caused by asbestos-containing products incorporated into the realty, there would be no question that the statute of repose would apply. See Commonwealth v. Owens-Corning Fiberglass Corp., 238 Va. 595, 385 S.E.2d 865 (1989). The instant case, however, involves a very different situation, one in which the statutory limitation has no application.
 
 
 16
 By its very terms, the statute of repose applies only to injuries "arising out of the defective and unsafe condition of an improvement to real property." Va.Code Ann. Sec. 8.01-250. The harmful exposure complained of by the plaintiffs, however, occurred prior to the point at which the insulation products were incorporated into the realty. The fact that the insulation was destined for such use when it was manufactured does not in and of itself activate the statute. The district court understood this distinction precisely, as evidenced by the ruling that evidence of exposures to "asbestos products which were incorporated into structures which are part of the real estate more than five years before plaintiffs filed suit" would be excluded. The trial court did not err in refusing to expand the statutory limitation further.
 
 IV.
 
 17
 In their cross-appeal, Bass and Taylor contend that the trial court abused its discretion in refusing to grant them a new trial after the jury returned a verdict against them. Their argument essentially points out the extensive similarities between their evidence and that adduced by their victorious co-plaintiffs. Their argument is unavailing.
 
 
 18
 A trial court may overturn a jury verdict and award a new trial if the court determines that the verdict is against the clear weight of the evidence or is the result of prejudice or some other improper consideration. Wadsworth v. Clindon, 846 F.2d 265, 266 (4th Cir.1988). The trial court's decision is reviewable only for an abuse of discretion. Id. We perceive no abuse of that discretion in the trial court's denial of the motion for a new trial.
 
 
 19
 Bass and Taylor dwell on the many similarities between each of their cases and the prevailing plaintiffs' cases. Bass's situation is readily distinguishable. Unlike the other plaintiffs, who worked as insulators, he was a pipefitter and he admitted that he never actually handled the asbestos-containing insulation products. While Taylor's job situation more closely resembled the others, other differences existed such that the different results can reasonably be explained. For example, Taylor continued to smoke cigarettes up to and through the time of the trial; the other plaintiffs were either non-smokers or former smokers. In any event, dissimilar results in similar cases do not dictate reversal with regard to the Bass and Taylor judgments. Will v. Comprehensive Accounting Corp., 776 F.2d 665, 678 (7th Cir.1985), cert. denied, 475 U.S. 1129, 106 S.Ct. 1659, 90 L.Ed.2d 201 (1986).
 
 
 20
 Substantial evidence was adduced by Celotex against both Bass's and Taylor's claims. Had these two cases been tried separately from the others, the verdicts would be virtually unassailable from the standpoint of sufficiency of the evidence. We are unpersuaded that the trial court abused its discretion in refusing to give them "another bite of the apple." Id. at 678.
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 The wife of each worker brought claims for loss of consortium
 
 
 [2]
 Each of these was reduced by the court to reflect the previous settlements
 
 
 [3]
 On February 10, 1989, a petition for involuntary bankruptcy was filed against Raymark in the United States Bankruptcy Court for the Eastern District of Pennsylvania. In re: Raymark Industries, Inc., Bky. No. 89-20233T. In the instant case, Raymark's notice of appeal was not filed until February 22, 1989, and Bass's and Taylor's notice of appeal was filed on March 7, 1989. Raymark's appeal in No. 89-1704 is dismissed, and Bass's and Taylor's appeal against Raymark in 89-1706 is also dismissed
 
 
 [4]
 Section 388 states:
 One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
 (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied; and
 (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
 (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.
 
 
 [5]
 Comment n to Sec. 388 states:
 Thus, while it may be proper to permit a supplier to assume that one through whom he supplies a chattel which is only slightly dangerous will communicate the information given to him to those who are to use it unless he knows that the other is careless, it may be improper to permit him to trust the conveyance of the necessary information of the actual character of a highly dangerous article to a third person of whose character he knows nothing. It may well be that he should take the risk that this information may not be communicated, unless he exercises reasonable care to ascertain the character of the third person, or unless from previous experience with him or from the excellence of his reputation the supplier has positive reason to believe that he is careful. In addition to this, if the danger involved in the ignorant use of a particular chattel is very great, it may be that the supplier does not exercise reasonable care in entrusting the communication of the necessary information even to a person whom he has good reason to believe to be careful. Many such articles can be made to carry their own message to the understanding of those who are likely to use them by the form in which they are put out, by the container in which they are supplied, or by a label or other device, indicating with a substantial sufficiency their dangerous character. Where the danger involved in the ignorant use of their true quality is great and such means of disclosure are practicable and not unduly burdensome, it may well be that the supplier should be required to adopt them.